AGREEMENT BETWEEN THE CITY OF CHULA VISTA AND
ULTRONICS, INC., A CALIFORNIA CORPORATION,
GRANTING TO ULTRONICS, INC. THE NON-EXCLUSIVE
RIGHT, PRIVILEGE AND FRANCHISE TO LAY AND USE
LINES, WIRES, COAXIAL CABLE AND APPURTENANCES FOR
TRANSMITTING, DISTRIBUTING AND SUPPLYING CABLE
TELEVISION SERVICE ALONG, ACROSS AND UPON THE
PUBLIC STREETS, WAYS, ALLEYS AND PLACES WITHIN
THE CITY OF CHULA VISTA

The parties to this agreement are the City of Chula Vista,
hereinafter referred to as "City" and Ultronics, Inc., hereinafter referred to
as "Grantee."

Section 1.   DEFINITIONS.

For the purpose of this franchise, the following terms, phrases,
words, and their derivations shall have the meaning given herein. When not
inconsistent with the context, words used in the present tense include the
future, words in the plural number include the singular number, and words in
the singular number include the plural number. Provisions of this franchise
shall be construed in accordance with the laws of the State of California.

a.   "City": The City of Chula Vista, a municipal corporation of the
State of California, in its present incorporated form, or in any
later reorganized, consolidated, enlarged or reincorporated form.

b.   "Council": The present governing body of the City or any future
board constituting the legislative body of the City.

c.   "Franchise Property": All property owned, installed or used
under authority of this franchise.

d.   "Grantee": The person or corporation to whom or which this
franchise is granted by the Council, and the lawful successor or
assignee thereof, and who or which has filed with the City an
acceptance referred to in Sections 3 hereof.

e.   "Street": The surface of, and the space above and below any
public street, road, highway, freeway, lane, alley, court,
sidewalk, parkway, easement, drive or other public place now or
hereafter existing as such within the City.

f.   "Cable Television System": Shall mean a system of antennas,
cables, wires, lines, towers, wave guides, or any other
conductors, converters, equipment or facilities, designed and
constructed for the purpose of producing, receiving, amplifying
and distributing, audio, video and other forms of electronic or
electrical signals.



EXHIBIT A

C087-017

g.  "Subscribers": Any person or entity receiving for any purpose the Cable Television System service of the franchise herein.

h.  "Total Gross Receipts": Any and all compensation in any form paid by the subscriber to the Grantee arising from the sale of basic and pay Cable Television service to customers within the corporate limits of the City. Without limitation, total gross receipts shall not include; (a) uncollectible amounts; (b) refunds or rebates made by Grantee; (c) revenues received as a direct reimbursement of Grantee's expense in the operation of any access channels; (d) sales, ad valorem, or other types of "add on" taxes, levies or fees calculated by gross receipts or gross revenues which Grantee might have to pay or collect for Federal, State or local government (exclusive of franchise fees provided for herein); (e) revenues received for advertising on Grantee's local origination channel, to the extent of Grantee's direct costs of operation of Grantee's system; and (f) non-operating revenues such as income from operations not requiring use of a franchise or gain from sale of an asset.

Section 2.   FRANCHISE GRANT.

The franchise hereby granted by the City authorizes Ultronics, Inc., Grantee, subject to the provisions herein contained, to engage in the business of operating and providing a Cable Television System in the City, and for that purpose to erect, install, construct, repair, replace, reconstruct, maintain and retain in streets such poles, wires, cable, conductors, ducts, conduit aults, manholes, amplifiers, appliances, attachments, and other property as may be necessary and appurtenant to the Cable Television Systems; and, in addition, so to use, operate and provide similar properties rented or loaned from other persons, firms, or corporations, for such purpose.

Section 3.   DURATION OF GRANT.

a.  The Franchise granted hereunder shall not become effective until the happening of following events:

    (1)  The written acceptance hereof by the Grantee accepting all of the terms and conditions of this Franchise and agreeing to be bound thereby, delivered to the City in a form approved by the City Attorney.

    (2)  The filing with the City of evidence of a general comprehensive liability insurance policy as required in Section 15(a) hereof.

b.  The term of this Franchise shall be twenty-three (23) years, commencing on the effective date of the Franchise as provided in paragraph (a) of this section, provided, however, that the term of this Franchise may be extended in accordance with the procedures set forth below:

-2-

(1) The provisions of this Franchise shall be subject to renegotiation every five (5) years during the term of the Franchise, including any extensions thereof. These renegotiation opportunities shall be referred to as "renegotiation intervals." Renegotiation may be initiated upon written notice given by the City or Grantee to the other not less than one (1) year prior to the particular renegotiation interval. Any renegotiation necessary shall be directed towards effecting alterations in the terms and conditions of this Franchise to reflect any significant changes which occurred during the interim period.

(2) If any renegotiation prior to the end of the term, including extensions of this Franchise, results in agreement between the City and Grantee, or if, alternatively, both parties agree, at any renegotiation interval as defined above, that no renegotiation is needed or required, then the term of this Franchise shall be extended for an additional five (5) years by an appropriate action of the City Council. If any renegotiation fails to result in agreement, the term shall not be extended unless the City Council so specifies by appropriate action.

(3) This Franchise shall terminate without further action by the City at the end of the term, including extensions, of this Franchise; provided, however, the total term of this Franchise, with extensions, shall not exceed fifty (50) years from the effective date of this ordinance; provided, further, that the City Council, at or before the end of the term, or the term as extended, retains the exclusive power to grant a further extension, or a renewal of this Franchise, or a new Franchise to Grantee.

c.   The Franchise may be terminated at any time by the City Council in the event the Council shall have found, after notice and hearing, that:

(1) The Grantee fails to comply with any material provision of this Agreement; however, termination proceedings shall only be commenced in a public meeting affording due process, if, after thirty (30) days from written notification from the City stating with particularity the grounds upon which the City relies, Grantee fails to correct stated violation. In the event the stated violation is not reasonably curable within thirty (30) days, termination proceedings shall not be commenced if the Grantee provides, within the said thirty (30) days, a plan, satisfactory to the City Manager to remedy the violation and continues to demonstrate good faith in seeking to correct said violation.

(a) It shall not be a failure to comply with a material provision of this ordinance for Grantee to comply with any rules and regulations of the Federal Communications Commission, or any Federal or State regulatory commission or agency having jurisdiction over Grantee's operations or any Federal or State law.

(b) The Council's finding of materiality is subject to a de novo review by a court of competent jurisdiction; or

(2) Any provision hereof has become invalid or unenforceable, and the Council finds that such provision constituted a material consideration to the grant of this Franchise.

The Grantee shall be given at least thirty (30) day's notice of any termination proceedings.

### Section 4.   RATES.

The Grantee may establish its own rates and charges.

### Section 5.   FRANCHISE PAYMENTS.

a.  The Grantee shall pay annually to the City, during the life of this franchise, and at the times hereinafter specified, a sum of three percent (3%) of the total gross receipts of the Grantee until January, 1990, after which the rate shall be the greater of three percent (3%) of the total gross receipts of Grantee or the rate then charged Cox Cable for its franchise, subsequent to the periodic renegotiation of rate provision in Cox's franchise. Such payment by the Grantee shall be in lieu of any occupation tax or any other tax based upon the gross receipts of Grantee.

b.  The Grantee shall file with the City within ninety (90) days after the expiration of any calendar year during which this Franchise is in force, a verified statement showing in appropriate detail the total gross receipts, as defined herein, of Grantee, its successors or assigns, during the preceding calendar year. It shall be the duty of Grantee to pay to the City, within fifteen (15) days after the time for filing such statements, the remaining sum due for the calendar year covered by such statements. This statement shall be the basis for quarterly estimated payments as deposits on the franchise payment due for the following year. Such quarterly estimated payments are to be made to the City on or before June 30, September 30, and December 31 of each calendar year for that year's estimated payments. Each estimated payment shall be equal to twenty five percent (25%) of the previously filed verified statement, rounded to whole, even dollars. The fourth payment due after the filing of the annual verified statement shall adjust for all estimated payments made for that calendar year.

-4-

c.  In the event Grantee fails to make the payment for this Franchise on or before the date due as hereinabove provided, Grantee shall pay as additional consideration a sum of money equal to one percent (1%) of the amount due for each month or fraction thereof during which the payment is due and unpaid, as interest and for loss of use of the money due.

d.  No acceptance of any payment shall be construed as an accord that the amount paid is, in fact, the correct amount, nor shall such acceptance of payment be construed as a release of any claim which the City may have for further or additional sums payable under the provisions of this section.

Section 6.   LIMITATIONS OF GRANT.

a.  No privilege or exemption is granted or conferred by this Franchise except those specifically prescribed herein or by law.

b.  Any privilege claimed under this franchise by the Grantee in any street shall be subordinate to any prior lawful occupancy of the streets, or other public property; provided, however, Grantee does not hereby waive any rights it has acquired vis-a-vis third parties as a result of Grantee's own proper occupancy.

c.  This Franchise is a privilege to be held in personal trust by the original Grantee. It cannot in any event be transferred in part, and it is not to be sold, transferred, leased, assigned, or disposed of as a whole, whether by forced sale, merger, consolidation, or otherwise, without prior consent of the City expressed by Resolution, unless pursuant to transfer of ownership of Grantee as provided in Section 9 hereof, and then only under such conditions as may be therein prescribed, provided, however, that no such consent shall be required for any transfer in trust, mortgage, or other hypothecation, as a whole, to secure an indebtedness. The said consent of the City may not be arbitrarily refused, provided, however, the proposed assignee must show financial responsibility and must agree to comply with the provisions of this agreement.

d.  Time is of the essence of this franchise. The Grantee shall not be relieved of its obligation to comply promptly with any of its provisions by any failure of the City to enforce prompt compliance.

e.  Any right or power in, or duty impressed upon, any officer, employee, department, or board of the City, is subject to transfer by the City to any other officer, employee, department or Board of the City.

f.   Grantee is subject to all requirements of the City ordinances, rules, regulations, and specifications of the City, not inconsistent with this Franchise, heretofore or hereafter enacted or established, including but not limited to, those concerning street work, street excavations, use, removal and relocation of property within a street, and other street work.

g.   This Franchise does not relieve the Grantee of any obligation involved in obtaining pole space from any department of the City, the utility companies or from others maintaining poles in streets.

Section 7.   RIGHTS RESERVED TO CITY.

a.   There is hereby reserved to the City every right and power which is required to be herein reserved or provided by any ordinance of the City, and the Grantee, by its acceptance of this Franchise, agrees to be bound thereby, and to comply with any action or requirement of the City in its exercise of any such right or power, heretofore or hereafter enacted or established.

b.   This franchise shall be non-exclusive, and neither the granting of this Franchise nor any of the provisions contained herein shall be construed to prevent the City from granting any identical, or similar franchise to any person or corporation other than the Grantee.

Section 8.   SERVICES TO CITY AND PUBLIC SCHOOLS.

Grantee shall at its own expense and without any cost to the City whatsoever, provide and maintain the following facilities and services to the City and Public Schools as hereinafter provided:

a.   One active cable television connection to each City unit designated by the City Manager such as police stations, fire stations, public libraries and other City facilities within Grantee's franchise area that require an aerial drop of 150 feet or less from the existing cable television distribution system. Grantee shall not be required to provide the cable television distribution system within said facilities;

b.   One active cable television connection to each public elementary school site, secondary school site, college or university site and educational administrative site within Grantee's Franchise area that require an aerial drop of 150 feet or less from the existing cable television distribution system. Grantee shall not be required to provide the cable television distribution system within said facilities;

c.  Grantee shall not charge the City or public schools any fee for providing the distribution of video images or audio signals to any of the buildings so connected;

d.  In the event that the City or school system desires additional service, the Grantee shall provide the basic cable outlet, services and hardware, charging the City or school system the actual variable cost to Grantee of such services.

e.  Grantee shall make available without cost one channel for use by Local Governments in all of its San Diego franchises for the distribution of programming in the public interest. Grantee may provide interconnection of such channel with all other Cable Television Systems operating pursuant to a franchise granted by City. If Grantee operates a remote or permanent vehicle and equipment for telecasting and video taping, Grantee shall provide origination service to City at such reasonable times and costs as are mutually agreed upon.

f.  Grantee shall make available without cost, one channel for use by Public Schools in all of its San Diego franchises. As required by Grantee, the Public Schools shall save and hold harmless Grantee from any uses made by the Public Schools in the distribution of programming.

g.  City shall save and hold harmless Grantee from any uses made by the City in the distribution of programming in the public interest as provided for in Subsection (e) of this section.

h.  Grantee shall make available without cost, one channel for public or community access in all of its San Diego franchises in accordance with reasonable rules, regulations and conditions, provided, however, that to the extent that the Federal Communications Commission (FCC) exercises jurisdiction as determined by Federal statute or decisional law to be valid and appropriate, said access rules shall govern.

Section 9.    TRANSFER OF OWNERSHIP OR CONTROL OF GRANTEE.

In the event the Grantee is a corporation, prior approval of the City Council, expressed by resolution, shall be required when ownership or control of thirty percent (30%) or more of the voting stock of Grantee is acquired by a person or a group of persons acting in concert, none of whom already own or control thirty percent (30%) or more of the voting stock, singularly or collectively.

-7-

Section 10.   ESTABLISHMENT OF SERVICE.

Installation of a CATV System shall be commenced within one hundred eighty (180) days after the effective ate of this franchise, and extensions and service pursued with due diligence thereafter. Failure to so commence and diligently pursue to completion shall be grounds for termination of this franchise.

Section 11.   LOCATION OF FRANCHISE PROPERTIES.

a.   Franchise property shall be constructed or installed in streets only at such locations and in such manner as shall be approved by the Superintendent of Streets, acting in the exercise of reasonable discretion.

b.   The Franchise property shall be placed underground in all subdivisions which are subject to the provisions of the Chula Vista Municipal Code.

Section 12.   ABANDONMENT OF SERVICE.

a.   After Grantee has established service pursuant to this Franchise, such service shall not be suspended or abandoned in the whole of or any part of the Franchise area unless the suspension or abandonment is authorized by the City Council.

b.   Whenever Grantee shall file with the City Council a written application alleging that the public interest, convenience and necessity no longer require that Grantee furnish service pursuant to this ordinance in the whole of or in any part of the Franchise area, the City Council, at a public hearing, shall take evidence upon that question and shall make a finding with respect to it. Notice of the hearing shall be given by Grantee in writing to each Subscriber in the part of the Franchise area in question at least fifteen (15) day prior to the date scheduled for the hearing. If the City Council shall find that the public interest, convenience and necessity no longer requires that Grantee furnish service, the City Council, after hearing as provided herein, shall authorize suspension or abandonment of service upon such reasonable terms and conditions as may be prescribed by the City Council.

**Section 13.**  DISPOSITION OF FRANCHISE PROPERTY OR CABLE DISTRIBUTION SYSTEM UPON EXPIRATION OR TERMINATION OF FRANCHISE.

a.   Upon the termination of this Franchise under Section 3 or 11 hereof, the City may purchase the cable television system, or any part thereof, in accordance with subsection (b) of this section. If the City elects to purchase the system, or any part thereof, the Grantee shall promptly execute, upon receipt of the fair market value purchase price, all appropriate documents to transfer title to the City. Upon acquisition of and payment for the system, or any part thereof, the Grantee shall cooperate with the City, or with any other person authorized or directed by the City to operate the system, in maintaining continuity of service. Nothing herein is intended as a waiver of any other rights the City may have.

b.   The purchase price to the City for the Grantee's property shall be determined by agreement or by arbitration as provided in subsection (e) hereof. The standard for determining the price to be paid for the property so acquired shall be that provided by law affecting the fair market value of similar properties applicable on the effective date of the purchase. If the City does not purchase the system, the Grantee shall deal with the part of the system located in the streets in accordance with provisions of subsections (c) and (d) of this section.

c.   In the event that (1) the use of any Franchise property is discontinued for any reason for a continuous period of twelve (12) months; or (2) the Franchise has been installed in any street without complying with the requirements of this Franchise; or (3) the Franchise has been terminated, surrendered, cancelled or has expired, and City has not exercised its rights pursuant to subsection (a) of this section, the Grantee shall promptly remove from the street all such property other than any which the City Engineer may permit to be abandoned in place. In the event of any such removal, the Grantee shall promptly restore the street or other area from which such property has been removed to a condition satisfactory to the City Engineer.

d.   Franchise property to be abandoned in place shall be abandoned in such manner as the City Engineer shall prescribe.

e.   In the event that arbitration is necessary to determine the purchase price to the City for the Grantee's property the parties may agree upon one arbitrator, but in the event that they cannot agree, there shall be three, one named in writing by each of the parties within fifteen (15) days after demand for arbitration is given and a third chosen by the two appointed. Should either party refuse or neglect to join in the appointment of the arbitrator(s) or to furnish the arbitrator(s) with any papers or information demanded, the arbitrator(s) are empowered by both parties to proceed ex parte. If there is only one arbitrator, his decision shall be binding and conclusive on the parties, and if there are three arbitrators the decision of any two shall be binding and conclusive. A judgment confirming the award of the arbitrator(s) may be rendered by any Superior Court having jurisdiction. Arbitration hereunder shall be governed by the provisions of the California Arbitration Act, Section 1280 through 1294.2 of the Code of Civil Procedure. Each party shall bear the cost of its own appointee and bear the cost equally for any arbitrator appointed by both parties.

## Section 14.   CHANGES REQUIRED BY PUBLIC IMPROVEMENTS.

The Grantee shall, at its expense, protect, support, temporarily disconnect, relocate above or below ground at Grantor's option in the same street, alley, or public place, or remove from any street, alley or public place, any Franchise property when required by the City Engineer by reason of traffic conditions, public safety, street vacation, freeway and street construction, change or establishment of street grade, installation of sewers, drains, water pipes, power lines, signal lines, and tracks and of any other type of structures or improvements by governmental agencies when acting in a governmental or proprietary capacity or any other structures or public improvements; provided, however, that Grantee shall in all such cases have the privileges and be subject to the obligations to abandon Franchise property in place, as provided in Section 12(d) hereof.

## Section 15.   FAILURE TO PERFORM STREET WORK.

Upon failure of the Grantee to complete any work required by the provisions of this Franchise to be done in any street, within the time prescribed and to the satisfaction of the City Engineer, the City Engineer may cause such work to be done and the Grantee shall pay to the City the cost thereof in the itemized amounts reported by the City Engineer to the Grantee, within thirty (30) days after receipt of such itemized report. The City shall give at least a thirty (30) day notice to the Grantee of such work to be done prior to City's commencement of such work.

Section 16.   FAITHFUL PERFORMANCE BOND.

The Grantee shall, within five (5) days after the award of this franchise, file with the City Clerk, and at all times thereafter maintain in full force and effect, an acceptable corporate surety bond, in duplicate, in the amount of Five Thousand Dollars ($5,000.00) effective for the entire term of this franchise, and conditioned that in the event the Grantee shall fail to comply with any one or more of the provisions of this franchise, then there shall be recoverable jointly and severally from the principal and surety of such bond, any damages suffered by the City as a result thereof, including the full amount of any compensation, indemnification, or costs of removal or abandonment of property as prescribed by Section 5 hereof which may be in default, up to the full amount of the bond; said condition to be a continuing obligation for the duration of this franchise and thereafter until the Grantee has liquidated all of its obligations with the City that may have arisen from the acceptance of this franchise by the Grantee or from its exercise or any privilege herein granted.

Section 17.   INDEMNIFICATION TO CITY.

a.   Grantee agrees that at all times during the existence of this Franchise it will maintain in force, furnish and file with the City a certificate of insurance evidencing, at its own expense, a general comprehensive liability insurance policy, naming the City as additional insured, in protection of City, its boards, commissions, officers, agents and employees, in a company authorized to do business in the State of California, and in form satisfactory to the City Attorney, protecting the City and said persons against liability for loss or damages for personal injury, death and property damage occasioned by the operations of Grantee under this Franchise, with minimum liability limits of $500,000 for personal injury or death of any one person, and $1,000,000 for personal injury or death of two or more persons in any one occurrence, and $300,000 for damage to property resulting from any one occurrence.

b.   The policies mentioned in the foregoing paragraph shall contain a provision that a written notice of any cancellation or reduction in coverage of said policy shall be delivered to the City ten (10) days in advance of the effective date thereof. If such insurance is provided in either case by a policy which also covers Grantee or any other entity or person than those above named, then such policy shall contain the standard cross-liability endorsement.

-11-

c.  In addition to the above policies Grantee shall agree to indemnify City, its boards, commissions, officers, agents and employees, against all claims, demands, actions, suits and proceeding by others and against all liability to others, and against any loss, cost and expense resulting therefrom, excepting acts of negligence or other acts by the City, including reasonable attorneys fees, arising out of the exercise or enjoyment of this Franchise.

Section 18.   REGULATION OF SERVICE.

Grantee shall:

a.  Operate the Cable Television System authorized by this Franchise in accordance with the minimum technical standards set forth by the FCC, to the effect that the Subscriber shall receive the best possible signal to his television set consistent with the state of the art and economic operation of the system.

b.  Limit failure to a minimum by locating and taking steps to correct malfunctions promptly, but in no event longer than seventy-two (72) hours after notice.

c.  Upon complaint by Subscriber make a demonstration satisfactory to the City Manager or his designated representative that a signal is being delivered which is of sufficient strength and quality to meet the said technical standards referenced to in (a) above.

d.  Render efficient service, making repairs promptly and interrupting service only for good cause and for the shortest time possible; such interruptions insofar as possible shall be preceded by notice given to Subscribers twenty-four (24) hours in advance where possible and shall occur during periods of minimum use of system.

e.  Have a toll free telephone number listed in the local telephone directory, and be so operated that requests for repair may be received at any time.

f.  Operate the Cable Television System authorized by this ordinance twenty-four (24) hours per day, seven (7) days per week.

g.  Not refuse to accept a subscriber unless it was not in the public interest or not reasonably economically feasible for Grantee to furnish service for that proposed subscriber.

h.  Not deny access to cable services to any group of potential residential cable subscribers because of the income of the residents of the local area in which such group resides.

If a Subscriber is unable to obtain satisfactory resolution of a complaint filed with Grantee, the Subscriber may notify the City in writing, stating the Subscriber's name and address, the nature of the complaint and the action taken to secure resolution of the complaint by the Grantee.

### Section 19.  FILINGS AND COMMUNICATION WITH REGULATORY AGENCIES.

Copies of all petitions, applications and communications of all types submitted by Grantee or City to the Federal Communications Commission, California Public Utilities Commission, or any other Federal or State regulatory commission or agency having jurisdiction over any matter affecting operation of Grantee's Cable Television System shall be submitted simultaneously to the City or Grantee. A copy of each document filed by the Grantee with the City Clerk in accordance with this section shall be deemed to be delivered.

### Section 20.  INSPECTION OF PROPERTY AND RECORDS.

At all reasonable times, the Grantee shall permit any duly authorized representative of the City to examine all Franchise property, together with any appurtenant property of the Grantee situated within the City, and to examine all maps and other records kept or maintained by the Grantee, which treat the operations, affairs, transactions or property of the Grantee with respect thereto and to determine whether the Grantee has paid franchise fees in the amounts prescribed in Section 5. The Grantee shall prepare and furnish to the City Engineer at the time and in the form prescribed by the City Engineer, such reports, with respect to its operations, affairs, transactions or property, as may be reasonably necessary or appropriate to the performance of any of the duties of the City or any of its officers and employees in connection with this Franchise. The Grantee shall, at all times, make and keep full and complete plans, maps, and records, showing the exact location of all Cable Television System equipment installed or in use by Grantee in streets, alleys and public places of the City.

The Grantee shall maintain a written record of customer service requests and complaints and make an annual report to the City thereof. Such records shall be available for inspection by the City. The Grantee shall notify the City of any changes in the customer service agreement or in the complaint procedure to be followed by the customers.

### Section 21.  DISPUTES.

In the event of a bringing of any action by either party hereto against the other hereon or hereunder, or by reason of the breach of any term, covenant or condition on the part of the other party, or arising out of this Agreement, the party in whose favor final judgment shall be entered, shall be entitled to have and recover from the other party reasonable attorney's fees to be fixed by the Court which shall have rendered the judgment.

Section 22.   MISCELLANEOUS PROVISIONS.

a.   All notices herein provided for may be by prepaid registered or certified mail addressed to the parties as follows:

TO THE CITY:                          WITH COPY TO:

City Clerk                            Thomas J. Harron
276 Fourth Avenue                     City Attorney
Chula Vista, CA 92010                 276 Fourth Avenue
                                      Chula Vista, CA 92010

TO THE GRANTEE:                       WITH COPY TO:

Ultronics, Inc.
7777 Alvarado Rd., Suite 700
La Mesa, CA  92041

and shall be considered as given only when received by the other party.

All matters herein provided to be filed with the City shall be filed with the City Clerk.

b.   The Grantee shall not engage in the business of repairing television receivers or the sale of parts for the same. It is understood, however, that the foregoing does not apply to converters, decoders, or other types of electronic signal adapters or decoders required for the subscriber's television set to receive any of Grantee's signals.

c.   Grantee and the City agree to discuss future non-entertainment uses of the cable television system during the term of this franchise agreement. Both parties agree to discuss and consider entering into mutually advantageous joint ventures to promote business or other non-entertainment uses of the cable system, which discussion may include City taxation and bonding powers. This discussion and consideration may be initiated by either party upon a minimum of 30 days written notice, with a proposed agenda to be included. This paragraph reflects the intent of the Grantee and the City to maintain a strong cooperative relationship which may lead to the introduction of new cable related business services within the City in a manner which is mutually advantageous and acceptable to both the Grantee and the City.

d. Not withstanding any other provisions of this agreement, Grantee shall at all times comply with all State and Federal laws, rules and regulations, or any administrative agency thereof; provided, however, if any such ordinance, law, rule or regulation shall require the Grantee to perform any act or shall permit the Grantee to perform any act in conflict with the provisions and terms of this agreement, then such provision or term in conflict may be modified or amended by agreement of the parties to such reasonable extent necessary to carry out the full intent and purpose of this agreement.

EXECUTED THIS ___15th___ day of ___September___, 19 _87_ .

CITY OF CHULA VISTA
a Municipal Corporation

By: _____
        Gregory R. Cox, Mayor

ATTEST:

_____
Jennie Fulasz, C.M.C., City Clerk
City of Chula Vista

ULTRONICS, INC.

By: _____
        Martin L. Altbaum
        President
        Ultronics

Approved as to form

_____   9/24/87
D. Richard Rudolf,
Assistant City Attorney

WPC 1696A

-15-

# Ultronics

November 1, 1987

Mr. John Goss
City Manager
City of Chula Vista
Chula Vista, CA 92010

Dear Mr. Goss,
On behalf of **ULTRONICS, INC.**, I accept all of the terms and conditions of the Cable Television Franchise Agreement granted to **ULTRONICS**. I look forward to the challenge presented to me; and am excited about giving the citizens of Chula Vista an alternative t heir present cable television service.

I have enclosed an insurance certificate as required by the Agreement. The surety bond will be in the mail to you in the next few days.

Sincerely,

Martin Altbaum, President
**ULTRONICS, INC.**

RE...
CITY ...
CHULA VISTA, CA
OCT  1987

## AGREEMENT FOR ASSIGNMENT
## OF
## CABLE TELEVISION FRANCHISE

**THIS AGREEMENT** made this 8th day of May, 2008, at Chula Vista, California, by and between CHULA VISTA CABLE, LTD., a California Limited Partnership, hereinafter referred to as "Assignor" or "CVC", and NEXHORIZON COMMUNICATIONS, INC. or its subsidiary, referred to in this Agreement as "Assignee."

WHEREAS, on September 8, 1987, by Ordinance number 2230, the City of Chula Vista (the "City") granted a franchise to Ultronics, Inc., pursuant to the "Agreement Between the City of Chula Vista and Ultronics, Inc., a California corporation, Granting Ultronics, Inc. the Non-Exclusive Right, Privilege and Franchise to Lay and Use Lines, Wires, Coaxial Cable and Appurtenances for Transmitting, Distributing and Supplying Cable Television Service Along, Across and Upon the Public Streets, Ways, Alleys and Places Within the City of Chula Vista" (the "Franchise"); and

WHEREAS, on June 7, 1989, the City approved the assignment of the Franchise from Ultronics, Inc. to Assignor, pursuant to Resolution No. 14134; and

WHEREAS, Assignor, on or about January 1, 2008, by a written Agreement Regarding Sale of Assets of, and Stock in Two Cable Companies Agreement, hereinafter referred to as the "Purchase Agreement", agreed to sell 100% of the assets and the business in Assignor for the purpose of transferring the ownership and operation of a cable television system within said city pursuant to the Franchise provided that approval is granted by City Council for transfer of franchise.

WHEREAS, pursuant to said Purchase Agreement, Assignor is required, as a part of its capital contribution, to assign the Franchise to Assignee in consideration of a one hundred percent (100%) equity ownership interest in the form of cash, stock and note payment; and

WHEREAS, Assignor desires to assign the Franchise to Assignee in accordance with the Partnership Agreement in compliance with Chula Vista Charter Section 1203, Chula Vista Municipal code Section 5.30.010, and section 6.c. of the Franchise agreement, and Assignee desires to accept such assignment;

NOW, THEREFORE, in consideration of the mutual promises herein contained, and other good and valuable consideration, the parties hereto agree as follows:

1) ASSIGNMENT
   Assignor hereby assigns to Assignee all of its right, title, and interest in the Franchise, and all of the rights, privileges and powers therein contained, warranting to Assignee that the same has not previously been assigned, transferred, or hypothecated in anyway to any other party.

2) CONSIDERATION
   In exchange for the Franchise the Assets to be Acquired, Buyer shall pay and deliver to CVC the consideration established in the Purchase Agreement.

3) ACCEPTANCE
   Assignee hereby accepts said assignment of the Franchise, and assumes all of the obligations of

2m B-12 B

3) ACCEPTANCE
Assignee hereby accepts said assignment of the Franchise, and assumes all of the obligations of the Franchise, as set forth in the Purchase Agreement. In special consideration for the consent of the City Council of the City of Chula Vista, California, to the assignment herein made, Assignee covenants and agrees to comply with, perform and be bound by each and all of the terms and conditions imposed by the Franchise, and by the Chula Vista City Charter and the Chula Vista Municipal Code with respect thereto.

4) FORM AGREEMENT
The subject headings of the paragraphs and subparagraphs of this Agreement are included for the purposes of convenience only and shall not effect the construction or interpretation of any of its provisions. This Agreement constitutes the entire agreement between the parties pertaining to the subject matter contained in it and supersedes all prior or contemporaneous agreements, representations, and understanding of the parties. No supplement, modification, or amendment of this Agreement shall be binding unless executed in writing by both of the parties hereto. No waiver of any of the provisions of this Agreement shall be deemed, or shall constitute, a waiver of any other provisions, whether or not similar, nor shall any waiver constitute a continuing waiver. No waiver shall be binding unless executed in writing by the parties making the waiver.

5) ATTORNEY'S FEES
Should any legal proceeding by instituted to enforce this Agreement, or any of the provisions thereof, the prevailing party shall be entitled to, in addition to any other remedy provided by law or equity, reasonable court costs and attorney's fees as determined by a court of competent jurisdiction.

6) CALIFORNIA LAW
This Agreement shall be governed by the laws of the State of California applicable to agreements made and to be executed within California.

IN WITNESS WHEREOF, the parties to this Agreement have duly executed on the day and year first above written.

Chula Vista Cable. Ltd., a California Limited Partnership

By: _____ (Signature)

Barbara Altbaum, General Partner

Barbara Altbaum, Trustee of the Altbaum Family Trust

Barbara Altbaum, President of Ultronics, Inc.

NexHorizon Communications, Inc.

By: _____ (Signature)

CALVIN D. McCoy. SR.   For

Calvin D. Smiley, Sr.
President & CEO

SIGNATURE PAGE AUTHORIZING THE AGREEMENT FOR ASSIGNMENT
OF CABLE TELEVISION FRANCHISE

Consent of the City Council of the City of Chula Vista, California, is hereby given to the assignment and transfer of the franchise rights hereinabove made from Chula Vista Cable, Ltd., a California Limited Partnership, to NexHorizon Communications, Inc. and NexHorzon Communications, Inc. is hereby accepted as the Franchisee under Chula Vista Ordinance Number 2230 in place and in stead of Ultronics, Inc. a California corporation, and its assignee, Chula Vista Cable, Ltd., a California Limited Partnership.

Dated: _6/2/08_ , 2008

City of Chula Vista

By: _____
Cheryl Cox, Mayor

Attest:

_____
, City Clerk

Approved as to Form:

_____
, City Attorney

Dated: _5/30/08_



**Department of Conservation & Environmental Services**

August 19, 2009

Calvin D. Smiley, Chairman/CEO
NexHorizon Communications, Inc.
9737 Wadsworth Parkway
Westminster, CO 80021

RE: Notice of Violations of Franchise Agreement

Dear Mr. Smiley:

This letter is sent to provide NexHorizon Communications, Inc. ("NexHorizon") notice, pursuant to Section 3.c.1 of the Franchise Agreement between the City of Chula Vista ("City") and NexHorizon that NexHorizon has failed to comply with material provisions of the Franchise Agreement. By this notice, the City is providing NexHorizon thirty days to correct the violations described below. If NexHorizon fails to do so, the City shall hold a public hearing on October 6, 2009, at 4:00 p.m., in the City Council Chambers, City Hall, Building 100, located at 276 4th Avenue, Chula Vista, California, to consider termination of the Franchise Agreement.

The specific material provisions of the Franchise Agreement which NexHorizon has violated, and the grounds on which the City is relying are as follows:

Section 5. Franchise Payments.
Section 5, requires NexHorizon to make specified payments to the City, so long as the Franchise Agreement is in effect. The City approved the assignment of the Franchise Agreement from Chula Vista Cable to NexHorizon on May 20, 2009. Since that time, the City has not received any payments from NexHorizon, as required by Section 5. The City's records indicate that the last payment received from Chula Vista Cable or NexHorizon was $4,920 on April 7, 2008 for the 2007 reconciliation payment. The City has no record of having received franchise fee payments or the corresponding late fees from Nexhorizon for the period from the first quarter of 2008 through June 30, 2009. With penalties and late fees, we estimate that amount to be approximately $50,000. An additional quarterly payment for 2009 is also due no later than September 30, 2009.

Section 14. Changes Required by Public Improvements, and

Section 15. Failure to Perform Street Work.
These Sections of the Franchise Agreement require NexHorizon to, among other things, relocate Franchise Property below ground, at NexHorizon's expense, when required by the City

EXHIBIT B

NexHorizon Franchise Default Notice
August 19, 2009
Page 2

Engineer. Pursuant to these provisions, the City has requested, both verbally and in writing that NexHorizon fulfill its responsibilities for participating in a trench agreement with the Utility as part of a 20a power line and utility undergrounding project.   Copies of that written correspondence are attached as Exhibit 1.

Section 16.  Faithful Performance Bond.
NexHorizon has not renewed and transmitted an executed bond to the City.

NexHorizon also needs to address the following additional items of the Agreement in a timely manner after the material provisions identified above are cured in order to bring NexHorizon into full compliance with the agreement.

Section 8. Services to City and Public Schools.
NexHorizon has not complied with any of the requirements of this section.

Section 10. Establishment of Service.
NexHorizon has failed to diligently pursue installation and extensions of the Cable System to completion, and plans submitted to the City for undergrounding appear to eliminate service to some residential areas.

Section 11. Location of Franchise Properties (b).
NexHorizon has failed to place Franchise property underground in a timely manner as described under Section 14 and 15.

Section 18. Regulation of Service (h).
Failure to provide cable services to any group of potential cable residential subscribers because of the income of the residents of the local area in which such group resides. NexHorizon appears to have made plans to reduce their service area as part of the transition from overhead to underground service.

Section 19. Filings and Communication with regulatory Agencies.
Failure to provide the City with a copy of any communications to State or Federal agencies at the same time such communications are submitted to the respective agencies.  The City has not received an annual FCC report.

The City requests that NexHorizon immediately cure its violations of the Franchise Agreement.

Over the years the City of Chula Vista has demonstrated patience and flexibility when working with Ultonics, Chula Vista Cable, and Nexhorizon to bring the potential value of a cable and communications over-builder to the City's consumers.  The City is under a declared economic emergency and more than ever has a responsibility to all its citizens to protect their interests and ensure cost effective and efficient use, and proper maintenance of the Right of Way by all users.

NexHorizon Franchise Default Notice
August 19, 2009
Page 3

The City has worked diligently to ensure that all franchisees are working in a collaborative manner that extends their services to all citizens in as competitive a manner as possible, and does not unnecessarily add to the cost of maintaining the right of way or their respective rates. Nexhorizon has failed to do its part to meet the intent and spirit of that Franchise Agreement, cooperate in a timely manner in planning and implementing right of way projects, or communicate resolution of those issues effectively with the City. It is for those reasons and the material provisions stated above that I am compelled to send this 30-day notice. Please contact me immediately if you have any questions regarding how to respond to these concerns.

Sincerely,

Michael T. Meacham, Director
Conservation & Environmental Services
(Utility Services)
619 409 5870
mmeacham@ci.chula-vista.ca.us

cc:     Jeff Vaglio, Chula Vista Office
        Scott Tulloch, Assistant City Manager
        Jill Maland, Deputy City Attorney

RESOLUTION NO. 2009-274

RESOLUTION OF THE CITY COUNCIL OF THE CITY OF CHULA VISTA DIRECTING STAFF TO COMMENCE TERMINATION OF THE NEXHORIZON FRANCHISE

WHEREAS, NexHorizon has failed to meet certain material provisions of the Franchise Agreement, and after reasonable attempts to cure such provisions staff has executed the notice required to consider possible termination of the Franchise Agreement; and

WHEREAS, on or about August 18, 2009, staff provided NexHorizon with a detailed list of the material provisions within the franchise agreement that NexHorizon has failed to comply; and

WHEREAS, staff has worked diligently with NexHorizon and has provided it with every reasonable opportunity to satisfy its obligations under the franchise agreement prior to the public hearing; and

WHEREAS, NexHorizon has not cured its failure to comply with certain material provisions of the franchise agreement; and

WHEREAS, the City has not received Franchise Fee and Utility User's Tax payments for the current fiscal year and the total payments are estimated to be approximately $60,000; and

WHEREAS, additionally, staff has invested resources in the development and bid implementation process for two (2) 20a utility under grounding projects; and

WHEREAS, these costs for these projects are recoverable through an allocation pursuant to the Public Utilities Commission and funded by local ratepayers; and

WHEREAS, the projects represent a value to the citizens of Chula Vista and to the extent the projects are not completed, costs increase or are duplicated by failure of the franchise to meet the obligations in a timely fashion, the City would either absorb those costs or the project would not be completed and the community would not receive the benefit of their investment; and

WHEREAS, the City has complied with Section 3.c. of the Franchise Agreement, regarding termination of the agreement.

NOW, THEREFORE, BE IT RESOLVED by the City Council of the City of Chula Vista that City staff is directed to commence termination of the Franchise Agreement between the City of Chula Vista and NexHorizon Communications Inc. for failure to comply with material provisions of the Franchise Agreement.

EXHIBIT C

Resolution No. 2009-274
Page 2

Presented by

Michael T. Meacham
Director of Conservation and
Environmental Services

Approved as to form by

Bart C. Miesfeld
City Attorney

PASSED, APPROVED, and ADOPTED by the City Council of the City of Chula Vista, California, this 17th day of November 2009 by the following vote:

AYES:       Councilmembers:    Bensoussan, Castaneda, Ramirez, Thompson and Cox

NAYS:       Councilmembers:    None

ABSENT:     Councilmembers:    None

Cheryl Cox, Mayor

ATTEST:

Donna R. Norris, CMC, City Clerk

STATE OF CALIFORNIA      )
COUNTY OF SAN DIEGO      )
CITY OF CHULA VISTA      )

I, Donna R. Norris, City Clerk of Chula Vista, California, do hereby certify that the foregoing Resolution No. 2009-274 was duly passed, approved, and adopted by the City Council at a regular meeting of the Chula Vista City Council held on the 17th day of November 2009.

Executed this 17th day of November 2009.

Donna R. Norris, CMC, City Clerk



**Nex Horizon**
Communications, Inc.

January 19, 2010

Mr. Michael Meacham
Conservation & Environmental Services Department
City of Chula Vista
276 Fourth Avenue
Chula Vista, CA 91910

*RE:   Termination Letter – January 15, 2010*
*VIA EMAIL & US MAIL CERTIFIED*

Dear Mr. Meacham,

This letter acknowledges receipt of the Letter of Termination to provide cable services to residents and businesses located within the City of Chula Vista.

NexHorizon has initiated conversations with Cox Communications to discuss an acquisition of the assets and our current subscriber base. To this end, NexHorizon respectfully requests that the City and/or its agents do nothing to interrupt the services to subscribers within the City until such time NexHorizon and Cox have concluded a deal and to discuss a plan for an orderly transition of the business.

NexHorizon will agree to keep the City informed of our efforts with Cox. Should NexHorizon reach agreement to sale assets to Cox, all franchise fees including any penalties will be remitted to the City within five business days of closing the transaction.

Since time is of the essence, NexHorizon has executed a Confidentiality Agreement with Cox and will meet with Cox officials on Thursday, January 21, 2010 to begin our deliberations. It is my anticipation that a timeline for closing and transition of all assets will be established at this meeting. Upon conclusion of our discussions, I will cause communication to be issued to your office to advise of the timeline.

If you have any questions, please call me at 303-905-9290.

Sincerely,

Calvin D. Smiley, Sr.
Chairman

Cc:   Robert Rento
      Richard Lubic

EXHIBIT D